IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Ray Edward Wells, a/k/a Ray           )
Anthony Wells, a/k/a Ray Wells,       )
                                      )      Civil Action No.2:10-cv-03111-CMC-BHH
                Plaintiff,            )
                                      )
        v.                            )      **REPORT AND RECOMMENDATION**
                                      )          **OF MAGISTRATE JUDGE**
                                      )
Warden Larry W. Powers; Officer       )
David Perry; Officer J. McCain; Officer )
Snipes; Officer Cochran; Officer Green; )
Dr. Bianco; Nurse Susan Blackwell;    )
Nurse Byars; Officer Tomhas Brown;    )
Lieutenant Sargent; and               )
Sergeant Woodford,                    )
                                      )
                Defendants.           )
_____)

        The plaintiff, proceeding *pro se*, brought this action pursuant to Title 42, United

States Code, Section 1983. This matter is before the Court upon several motions: (a)

Plaintiff's Motion for Summary Judgment (Dkt. No. 55); (b) Defendant Dr. Bianco's Motion

for Summary Judgment (Dkt. No. 75); (c) Plaintiff's Second Motion for Summary Judgment

(Dkt. No. 84); (d) Motion for Summary Judgment filed by all Defendants except Dr. Bianco

(Dkt. No. 91); and (e) Plaintiff's Motion to Strike (Dkt. No. 96).

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and

Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are

referred to a United States Magistrate for consideration.

        The plaintiff brought this action on or about December 6, 2010. (See Dkt. No. 1.) On

or about June 15, 2011, Plaintiff filed a Motion for Summary Judgment captioned as "Motion

to Grant Plaintiff Complaint, Amended Complaint, and Supplemental Complaint." (Dkt. No.

55.) On August 5, 2011, Defendant Bianco filed a Motion for Summary Judgment. (Dkt. No.

75). By order filed August 10, 2011, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th

Cir. 1975), the plaintiff was advised of the dismissal procedure and the possible

consequences if he failed to adequately respond to the motion. (Dkt. No. 79.) Plaintiff filed two responses to this motion. (See Dkt. No. 81; Dkt. No. 83.) Plaintiff filed his Second Motion for Summary Judgment on or about September 6, 2011. (Dkt. No. 84.) On November 18, 2011, all Defendants (with the exception of Dr. Bianco) filed a Motion for Summary Judgment. (Dkt. No. 91.) By order filed November 21, 2011, pursuant to Roseboro, 528 F.2d 309, the plaintiff was again advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 93.) On or about December 5, 2011, the plaintiff responded to and also moved to strike Docket Number 91, Defendants' Motion for Summary Judgment. (See Dkt. No. 96.)

## **PROCEDURAL FACTS**

At the time relevant to the instant case, Plaintiff was a pretrial detainee housed at Spartanburg County Detention Facility ("SCDF"). It is unclear from a reading of Plaintiff's Complaint and Amended Complaints exactly what Plaintiff alleges to have occurred as well as when, though it is clear that the instant case is one for deliberate indifference to a serious medical need. (See Dkt. No. 1; Dkt. No. 12; Dkt. No. 21.) It is also possible that Plaintiff is attempting to assert a claim for "unsafe conditions" at SCDF as well as a claim for excessive force. (See Dkt. No. 21 at 3 of 3; Dkt. No. 55 at 5 of 10.)[1]

Plaintiff alleges he was injured on "5-26-10 and 10-25-10 and also 12-5-10" but "receive[d] no medical care or treatment" even though he requested it. (Dkt. No. 12-3 at 16.) Plaintiff claims that on May 26, 2010, he fell over a steel cot in an "overcrowded" room,

---

[1]Plaintiff alleges, *inter alia*,
The Plaintiff states he claims cruel and unusual punishment for having a steel cot taking over half the floor where a pretrial detainee [has] to walk and the steel cot has hinder[ed] the Plaintiff['s] ability to move around in the room with crutches because of the cot's location and the Plaintiff states that the steel cot hinder[s] him to get in and out of the room with or without crutches.
(Dkt. No. 12-2 at 3 of 8.)

2

whereby Plaintiff hit his head on the concrete floor, hurt his back, and suffered a cut on his leg. (Id. at 18; see also Dkt. No. 1 at 7 of 12.)  Plaintiff contends that he did not receive adequate medical care after his fall, and that his leg ultimately became so swollen and infected that it necessitated a trip to the Spartanburg Regional Medical Center Outpatient Clinic. (See Dkt. No. 12-3 at 17-19.) Plaintiff alleges that when he fell, he was "on the floor for longer than an hour . . . [and] most surely was not alert." (Dkt. No. 1 at 7 of 12.) Plaintiff states that a nurse came from medical but "looked at [him] on the floor and did not take [his] pulse [or] blood pressure and did not ask or try to take it." (Id.) According to Plaintiff, Defendant Woodford "left [him] laying on this cold concrete floor and came back" with Defendants Snipes and Cochran "to get [Plaintiff] off the floor." (Id.) Plaintiff states, "The way they grabbed me they hurt my back and leg worse and I'm still hurting from the way they handled [me]." (Id.) Plaintiff alleges that Defendant Woodford "should not have told Officer Snipes and Officer Cochran to get [Plaintiff] off the floor because they kn[ew no] one from medical was around." (Id.) Plaintiff alleges that "he told Officer Snipes and Officer Cochran that they were hurting his back but they simply ignored the Plaintiff . . ." (Dkt. No. 12-2 at 6 of 8.)

Plaintiff also contends that on October 25, 2010, as Defendant McCain[2] was handing out medication, Plaintiff told McCain that he had a migraine headache and that he "had been having poor circulation in [his] legs . . . and that [he] had been experiencing heaviness when trying to walk on [his] . . . crutches. . . " (Dkt. No. 1 at 5 of 12.) According to Plaintiff, Defendant McCain stated that he would "call[] medical" but never did. (Id.) In addition, although not clear when this is alleged to have occurred, Plaintiff alleges that Nurse

---

[2]Plaintiff spells Defendant McCain's last name as "McCain," while it appears the correct spelling may be "McCann." Defendant "McCain" and "McCann" are one in the same.

Blackwell "deliberately and intentionally denied [Plaintiff] of his tramadol . . . for pain." (Dkt. No. 12-2 at 5 of 8.)

It appears that Plaintiff contracted staph on his leg. (See Dkt. No. 21-1 at 4 of 6.) In addition to this infection, Plaintiff alleges that he has migraine headaches and "chronic pains" in his legs, and that he was forced to live in a room that required the use of stairs, even though using his crutches on the stairs caused him pain. (Id. at 6 of 6; see also Dkt. No. 12-2 at 6 of 8.)

Plaintiff seeks both compensatory and punitive damages in the instant action. (See Dkt. No. 1; Dkt. No. 12; Dkt. No. 21.)

## **APPLICABLE LAW**

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## **DISCUSSION**

As noted above, several motions are pending in the case *sub judice*. The undersigned will address each motion in turn.

4

**A.     Motion for Summary Judgment Filed by Defendants**

All Defendants (with the exception of Defendant Dr. Bianco) joined in the Motion for Summary Judgment filed on November 18, 2011. (See Dkt. No. 91.) In that motion, Defendants contend that "any and all allegations surrounding May 26, 2010 should be denied based on the princip[les] of res judicata, since Wells filed a prior lawsuit concerning that date (8:10-1490-CMC-BHH), and summary judgment was previously granted in favor of the Defendants." (Dkt. No. 91-1 at 2.) Defendants further state," As to the remaining claims, none are supported by evidence or medical testimony. Further, Wells has failed to state a claim for recovery under 42 U.S.C. § 1983." (Id.)

**1.     Plaintiff's Claim for Deliberate Indifference to Serious Medical Needs**

It is clear that Plaintiff attempts to assert a claim for deliberate indifference to serious medical needs. (See generally Dkt. No. 1; Dkt. No. 12; Dkt. No. 21.) Defendants seek summary judgment on this claim, contending that "the medical staff at the SCDF responded appropriately to all of Wells' medical claims and provided him the treatment necessary and warranted by his medical conditions." (Dkt. No. 91-1 at 5 of 14.) Defendants further state that "the officers and medical staff of the SCDF acted appropriately on October 25, 2010 when Wells refused to get up off the floor until he received the medical treatment he wanted." (Id.)

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal citations omitted).[3] To prevail on an Eighth Amendment deliberate indifference claim, "a

---

[3]The Fourteenth Amendment, rather than the Eighth Amendment, governs Plaintiff's claims because Plaintiff was a pre-trial detainee. However, the governing standard is the same under either the Eighth or Fourteenth Amendment. See Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir.1990); Lancaster v. Monroe County, Alabama, 116 F.3d 1419, 1425 n.6 (11th

prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." Id. It is well-settled that mere negligence does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06; Grayson v. Peed, 195 F.3d 692, 695-96 (4th Cir. 1999); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (holding that "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim pursuant to § 1983).

### a. The Evidence

Defendants filed several exhibits along with their Motion for Summary Judgment; one such exhibit is the Affidavit of Defendant Blackwell, a Registered Nurse at SCDF. (See Dkt. No. 92-1.) Blackwell states that upon Plaintiff's incarceration, he "alleged that he had ongoing pain from a previous hip injury (not related to the May 26, 2010 fall and not occurring during his incarceration at the SCDF)." (Blackwell Aff. ¶ 3.) Defendant Blackwell further stated,

> 4. Wells continuously complained about chronic pain in his right leg and migraine headaches. Throughout his incarceration, Wells received pain medication to alleviate his discomfort. Wells constantly submitted medical request forms to the medical staff at the SCDF. Despite many of these being duplicative in nature, the medical staff and/or Dr. Salvatore Bianco, the contract physician at the SCDF, reviewed every request and provided medical treatment if such was warranted.
>
> 5. There appears to be no correlation between Wells' fall in May of 2010 and the boils that appear on Wells' leg in January of 2011. Wells was seen in

Cir.1997) (overruled on other grounds by LaFrere v. Quezada, 588 F.3d 1317 (11th Cir. 2009)).

medical on May 1, May 25, August 11, and October 25 of 2010, when he was examined and evaluated for medication. There is no reference to a cut on Wells' leg as a result of a fall in May. Wells has been regularly given medication, including pain medication, according to the institutional physician's orders.

6. In January of 2011, Wells was examined by the medical staff at the SCDF regarding a red knot on his left leg. He was prescribed Bactrim, an antibiotic, in an effort to remedy this medical problem. Later that same month, Wells' right leg became swollen. He was transported to the Spartanburg Regional Medical Center for evaluation and treatment. A boil was noted on his leg and was cultured. He was returned to the SCDF with instructions to complete the Bactrim previously prescribed. The culture from Wells' leg contained Methicillin Resistant Staphylococous Aureus (MRSA or Staph). Staph is a type of bacteria that can get into the small glands or hair follicles in the skin and form a pus pocket. Staph bacteria can also live harmlessly on many skin surfaces, especially around the nose, mouth, and genitals. The nose is the most common entryway for many germs including colds, virus, as well as staph.

7. As shown by the attached medical records, Wells was provided treatment for his staph infection. (Exhibit A). Unfortunately, MRSA infections can be difficult to resolve. Wells had several other boils that had to be treated by the medical staff of the SCDF as well as the Spartanburg Regional Medical Center. Despite his claims, Wells' bandages were routinely changed and proper medical care was provided.

(Id. ¶¶ 4-7.)

Defendants also filed the Affidavit of Defendant Byars, a Registered Nurse at the

SCDF. (See Dkt. No. 91-2.) Byars states, "Contrary to [Plaintiff's] allegations, Wells received

medical treatment from the SCDF medical staff." (Byars Aff. ¶ 4.) Byars further states,

On October 25, 2010, I was notified by Sergeant Elizabeth Woodford that Wells was lying in the floor of his housing unit in front of the officer's desk. When I arrived in the housing unit, Wells was on his back with his crutches to the sides. I asked if Wells fell to which he replied, "No." He would not explain how he ended up on the floor. Wells stated that his right leg and hip hurt and that he wanted to see a doctor or a specialist that night. He continued to refuse to explain what was wrong with his legs or hip. He would not raise his arms, legs, head or any body part unless he got to see a doctor or specialist that night. Wells did allow me to examine his hips to feel for deformities. No deformities were noted except for an old scar to the right hip area. There was no swelling and the areas were symmetric. Wells refused to have his blood pressure or vital signs taken. He further refused to answer questions about his

7

> medical history or medications. Instead of cooperating, Wells raised his voice and stated that I had his chart and could look up this information. I notified Lieutenant John Thomas Sargent of my findings, or lack thereof.

(Id.) Byars also stated that after she examined Plaintiff, "Wells was assisted back to his cell by the officers," and Wells "did not complain of any pain or make a sound while being assisted back to his cell." (Id. ¶ 5.) According to Byars, when Byars left the housing unit, "Wells was resting on his cot in his cell," and Byars then "placed Wells on the doctor list for evaluation." (Id.) Byars further stated that "[d]uring this encounter, Wells never told [her] that he had lost consciousness or had been forced to remain on the floor for over an hour." (Id. ¶ 6.) Byars noted that on October 27, 2010, Dr. Bianco, the SCDF contract physician, examined Wells and "did not request any additional care to be provided to Wells, merely to continue his current care." (Id. ¶ 7.)

Defendant McCann also states that Plaintiff laid on the floor in protest. (See McCann Aff.; Dkt. No. 91-3.) McCann explains the events of October 25, 2010, as follows:

> On October 25, 2010, Wells walked to my desk on crutches and said "McCann, my leg." He then sat down on the floor and gently lowered himself until he was laying on his back. I instructed all inmates to return to their cells and secured their doors. I asked Wells what was wrong. He stated, "My leg, my leg, It gave out." Wells was alert and responsive and appeared to breathe normally as I questioned him. Wells stated that he could not get up on his own and needed to see a doctor. He refused to get up. As a result, I contacted my superior, Lieutenant John Thomas Sargent, about Wells' actions. Lieutenant Sargent entered Pod 6 and spoke with Wells. Wells was uncooperative and refused to offer any information about why he was laying on the floor other than repeating, "My leg gave out." Wells refused to even attempt to sit up. I again tried to talk to Wells, but he would just repeat, "My leg hurts, I need to see a doctor." Shortly thereafter, Nurse Terry Byars came to the housing unit to examine Wells. She attempted to ask Wells questions about his leg. Wells refused to offer any medical information or history and became loud when stating, "Just do your fucking job and get me a doctor. Y'all should know my medical history. Go look it up and stop playin' me like I'm stupid." Nurse Byars exited the pod and returned a short while later with Lieutenant Sargent, Sergeant Elizabeth Woodford, Officer Joel Snipes, Officer Kevin Cochran, and Officer Green to assist Wells back to his cell.

(McCann Aff. ¶ 4.) McCann further stated that he did not hear Wells "make complaints of pain as he was escorted to his cell" and that Wells did not lose consciousness. (Id. ¶ 5.)

In his numerous filings, Plaintiff repeats often–in a conclusory fashion–that he requested medical care on May 26, 2010; October 25, 2010; and December 5, 2010, but that Defendants refused to treat Plaintiff. (See Dkt. No. 83 at 9 (Dr. Bianco); Dkt. No. 84 at 3 (Defendants Sargent, Woodford, McCain, Snipes, Cochran, Green, Byars, and Blackwell); .)[4] The undersigned has reviewed all of Plaintiff's filings in the instant case, and will discuss the evidence presented by Plaintiff in support of his claims.

In his first Motion for Summary Judgment (Dkt. No. 55), Plaintiff contends that Defendant Brown was the supervisor in Pod Six on May 26, 2010. (See Dkt. No. 55 at 2 of 10.) Plaintiff states that he had spoken to Defendant Brown about the inadequate space in the cell with the steel cot, but that Brown "refused to do anything about the situation" and "ignore[d him]." (Id.) It is not clear whether Plaintiff contends that Brown saw Plaintiff fall and

---

[4]Plaintiff also contends the Motion for Summary Judgment (Dkt. No. 91) should be denied because he has not "receive[d his] discovery." (Dkt. No. 95 at 1 of 6.) Plaintiff states that he needs discovery because he had a staph infection twice on the left leg and twice on the right leg; he states that he needs a copy of "the film that was filming the hold [sic] pod six" because "it can prove what happen[ed]." (Dkt. No. 95 at 2 of 6.) In his Response in Opposition to Plaintiff's Motion to Strike, Attorney Darwin states,

> The undersigned has gone through all of the materials in his file in this matter, which is quite extensive, and can find no discovery requests served by the plaintiff. Furthermore, to the extent the plaintiff is seeking discovery, he should be in possession of all pertinent documents in this case, since defendants' summary judgment motion and attachments consisted of 193 pages, including all relevant records at issue. Therefore, defendants fail to see how plaintiff could possibly be prejudiced, in any manner, from not having availed himself of the discovery process.

(Dkt. No. 101 at 1-2.)

The undersigned has reviewed the docket in the case *sub judice*, and there is no Motion to Compel therein. Plaintiff complains–almost a year after this case was filed–about the lack of discovery when it is clear he failed to file the appropriate motion pursuant to Rule 37 of the Federal Rules of Civil Procedure, and Attorney Darwin indicates that Plaintiff has not initiated the discovery process *at all*. Likewise, the undersigned has reviewed the record and not found any discovery requests therein. Plaintiff's argument therefore must be rejected.

refused Plaintiff medical treatment after witnessing the fall, or whether Plaintiff alleges Brown simply did not address the inadequate space in the cell, though it is likely Plaintiff complains of the former. Plaintiff states, "Tomhas Brown ignored and fail[ed] to react to a widespread safety problem by witnessing the Plaintiff injuries he refused the Plaintiff medical care that violated the Plaintiff's rights." (Id.) Plaintiff further states that he requested medical care but was refused, even though Brown "witness[ed] the concrete floor causing the Plaintiff to also blackout from the fall." (Id.) Plaintiff seems to suggest that around this time, Dr. Bianco had knowledge of the fall (because Plaintiff wrote to him) but that Bianco refused to treat Plaintiff. (Id. at 1-2.) Plaintiff contends that he did not receive medical treatment for the injuries he received on May 26, 2010, until January of 2011 "when [his] right leg had to be cut and drain[ed] from the swollen infection built up germs, p[uss], durt and blood at the Spartanburg Regional Medical Center." (Dkt. No. 81 at 2 of 7.)

Plaintiff also presents evidence that on October 25, 2010, he fell to the floor and thereafter asked Defendant McCain to call medical, who stated that he would call but did not. (Id. at 4 of 10.) According to Plaintiff, on October 25, 2010, his legs gave out, and he sought medical treatment, which was denied. Plaintiff states that Woodford, McCain, Snipes, Cochran, Green, and Nurse Byars let Plaintiff "lay on a cold concrete floor for a[n] hour or longer." (Dkt. No. 83 at 2.) Plaintiff states that while he was laying on the floor, he "request[ed] medical care and treatment . . . was refused." (Id.) According to Plaintiff, after Defendants Sargent, Woodford, McCain, Snipes, Cochran, Green, and Byars left Plaintiff lying on the cold floor for over an hour, they "snatched [him] up and carried [him] to his cell still without medical care treatment that the Plaintiff requested." (Dkt. No. 84 at 3.)

Finally, Plaintiff contends that Defendant McCain saw his swollen right leg on December 5, 2010, but refused Plaintiff medical care and injured Plaintiff. (Dkt. No. 83 at 3.) Plaintiff complains about the way McCain grabbed him, asserting McCain "intended to

10

provide an incident to swell his leg up some more under the guise of maintaining order."[5]

Plaintiff contends that after McCain looked down and noticed Plaintiff's right leg was swollen,

McCain "approached the Plaintiff from behind his back by grabbing the Plaintiff by placing

his hand on the Plaintiff['s] left arm shoving and pushing the Plaintiff in an escort position

hurting the Plaintiff." (Dkt. No. 84 at 4.) According to Plaintiff, he told McCain that McCain

was hurting Plaintiff's back and right leg, as McCain was "walking the Plaintiff really fast as

if almost running the Plaintiff to his cell." (Dkt. No. 84 at 4.) Plaintiff states that on December

5, 2010, he asked McCain for medical care and treatment but was "refused." (Dkt. No. 84

at 4.)

### b. Analysis

Plaintiff's claim for deliberate indifference appears centered on his contention that he

did not receive medical care *on the very day* he was injured, and Defendants were therefore

deliberately indifferent to his serious medical needs. (See Dkt. No. 96 at 2 of 7 (Plaintiff says

that he "receive[d] no medical care on the dates of 5-26-10, and 10-25-10, also 12-5-10 the

dates the damages and injuries occurred."); see also Dkt. No. 95 at 2 of 6 (Plaintiff states

that he is "not speaking of before or after [May 26, 2010; October 25, 2010; and December

5, 2010 but is] speaking [of] the date they occurred.").) Indeed, Plaintiff states, "Defendant's

attorneys are saying I received medical care that's true," but Plaintiff contends he did not

receive medical care on May 26, 2010; October 25, 2010; and December 5, 2010. (Dkt. No.

98 at 1 of 9.)

To the extent Plaintiff is claiming deliberate indifference with respect to the injury that

occurred on May 26, 2010, that claim must be rejected. In Wells v. Spartanburg County

---

[5]Plaintiff seems to admit he did not respond to McCain's direct order, stating, "Refusal directives alone does not justify a response such as occurred in this case . . . ." (Dkt. No. 73 at 5 of 9.)

Detention Center Facility Employees et al., No. 8:10-1490-CMC, Plaintiff raised the claim of deliberate indifference related to his fall on May 26, 2010, and the Defendants in that case were granted summary judgment. Res judicata bars a claim when there has been a final judgment on the merits in a prior suit involving the same parties or their privies and the same cause of action. See I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co., 723 F.2d 944, 946-47 (D.C.Cir.1983). The four factors that must exist for res judicata to apply are (1) an identity of parties in both suits; (2) a judgment rendered by a court of competent jurisdiction; (3) a final judgment on the merits; and (4) the same cause of action in both suits. See Brannock Assocs., Inc. v. Capitol 801 Corp., 807 F.Supp. 127, 134 (D.D.C.1992) (citing U.S. Industries, Inc. v. Blake Constr. Co., 765 F.2d 195, 205 n. 21 (D.C.Cir.1985)). The purpose of res judicata is to "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and to prevent serial forum-shopping and piecemeal litigation." Hardison v. Alexander, 655 F.2d 1281, 1288 (D.C.Cir.1981). The undersigned concludes that the elements of res judicata are present, and therefore recommends granting Defendants' Motion for Summary Judgment on Plaintiff's claim for deliberate indifference on May 26, 2010.

Turning to Plaintiff's claim of deliberate indifference on October 25, 2010, it is undisputed that Nurse Byars was present in Pod Six on the actual date Plaintiff relies upon–October 25, 2010–as Plaintiff is suing Byars for, *inter alia*, her actions on October 25. Plaintiff contends that the statements in Nurse Byars' Affidavit are "far from the truth," but Plaintiff does not state specifically which facts he contends are untrue. (Dkt. No. 96 at 6-7 of 7.) He does not dispute Defendants' evidence that Nurse Byars placed Plaintiff on the doctor list for evaluation. (See Byars Aff. ¶ 5.) In addition, there is undisputed evidence that Plaintiff saw Dr. Bianco on October 27, 2010, and that Dr. Bianco "did not request any additional care to be provided to Wells, merely to continue his current care." (Byars Aff. ¶ 7.)

Finally, with respect to Plaintiff's claim related to December 5, 2010, it is unclear exactly what injury Plaintiff alleges he suffered on that date. Plaintiff complains that Defendant McCain saw Plaintiff's swollen right leg but refused medical care and injured the Plaintiff. (Dkt. No. 83 at 3.) This claim appears to be one for the use of excessive force instead of deliberate indifference. However, even evaluating the claim as one for deliberate indifference to serious medical needs, the claim fails. It is undisputed that Plaintiff had not been diagnosed with MRSA at this time, and there is no evidence that Plaintiff had the red knots associated with the infection on December 5. In short, while Plaintiff claims injury on that date, there is no evidence of such injury, other than Plaintiff's conclusory allegation that he was injured when McCain placed Plaintiff in an escort hold.

Furthermore, the undisputed evidence reveals that Plaintiff was examined by the medical staff at the SCDF regarding a red knot on his left leg in January of 2011. (Blackwell Aff. ¶ 6.) Plaintiff does not dispute Defendants' evidence that he was "prescribed Bactrim, an antibiotic, in an effort to remedy this medical problem." (Id.) Nor does Plaintiff dispute the evidence that he was transported to Spartanburg Regional Medical Center on January 12, 2011, for treatment. (See id.; see also Dkt. No. 81 at 2 of 7; Dkt. No. 86-3.) Plaintiff himself acknowledges he received treatment for the staph infection, but he contends the treatment was inadequate. He says, "[T]he Defendant Employee's medical personnel and also Dr. Bianco would start off treating the injuries and damages to the staff [sic] infection then they would stop and start treating they systems [sic] then the staff [sic] infection would return. Something the Plaintiff was not incarcerated with." (Dkt. No. 83 at 4-5.) While Plaintiff states that he contracted staph four times while incarcerated at SCDF, he admits that the first staph infection on his left leg had gotten well. (Dkt. No. 84-1 at 2 of 34.) The first indication of infection was in January of 2011, and Plaintiff received treatment for it then.

Although Plaintiff was not satisfied with the treatment he received for his staph infections, complaining that the wound dressing was not changed often enough, such disagreement does not amount to deliberate indifference. See Wright v. Collins, 766 F.2d 841 (4th Cir. 1985) (disagreement as to the proper medical care is not sufficient to establish deliberate indifference to a serious medical need); see also Tozzi v. N.C. Dep't of Corr., 846 F.2d 74 (4th Cir. 1988) (unpublished table decision) (citing Wright, 766 F.2d at 849) ("Absent exceptional circumstances, a difference of opinion between a physician and a prisoner about the appropriate treatment of a condition does not constitute . . . deliberate indifference."); Estelle, 429 U.S. at 105-06 ("[A]n inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' . . . . Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Because Plaintiff's claims for deliberate indifference fail, the undersigned recommends granting Defendants' Motion for Summary Judgment (Dkt. No. 91) on this claim.[6]

## 2.    Plaintiff's Claim for Excessive Force

Plaintiff seeks to assert a claim for excessive force against Defendant McCain for force allegedly used on December 5, 2010. Plaintiff complains about the way McCain

---

[6]The undersigned also recommends granting Dr. Bianco's Motion for Summary Judgment for the reasons discussed herein. Plaintiff may not now bring a claim for deliberate indifference for his fall on May 26, 2010, as he has already litigated that claim. Turning to the other two dates in question, the evidence is undisputed that Dr. Bianco saw Plaintiff on October 27, 2010, and ordered that his current treatment be continued, and that Plaintiff was treated by Dr. Bianco and the Spartanburg Regional Medical Center in January of 2011. In addition, to the extent Plaintiff's claim is limited to three specific dates, it is unclear whether Dr. Bianco had knowledge of Plaintiff's alleged injuries on these dates. The undersigned therefore recommends granting Defendant Bianco's Motion for Summary Judgment. (Dkt. No. 75.)

14

"grabbed" him, stating that McCain "intended to provide an incident to swell his leg up some more under the guise of maintaining order." (Dkt. No. 73 at 5 of 9.) According to Plaintiff, on December 5, 2010, after McCain looked down and noticed Plaintiff's right leg was swollen, McCain "approached the Plaintiff from behind his back by grabbing the Plaintiff by placing his hand on the Plaintiff['s] left arm shoving and pushing the Plaintiff in an escort position hurting the Plaintiff." (Dkt. No. 84 at 4.) Plaintiff contends he told McCain that McCain was hurting Plaintiff's back and right leg, as McCain was "walking the Plaintiff really fast as if almost running the Plaintiff to his cell." (Dkt. No. 84 at 4.)

A Fourteenth Amendment[7] claim of excessive force exists where the defendant "inflicted unnecessary and wanton pain and suffering" on an arrestee or pretrial detainee, and where the force was applied "maliciously and sadistically for the very purpose of causing harm." Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir.1998) (abrogated on other grounds by Wilkins v. Gaddy, 130 S.Ct. 1175 (2010)). In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. Whitley v. Albers, 475 U.S. 312, 320-21 (1986); see also Wilkins, 130 S.Ct. 1175. The objective component of an excessive force claim is not nearly as demanding, however, because "[w]hen prison officials maliciously and sadistically use force to cause harm . . . contemporary standards of decency are always violated . . . whether or not significant injury is evidence." Wilkins, 130 S.Ct. at 1179 (internal citations and quotations omitted).

The Supreme Court has directed that several factors should be balanced in determining whether prison officials acted maliciously and sadistically. These factors include

---

[7]As noted above, Plaintiff was a pretrial detainee at all times relevant in the case *sub judice*. His excessive force claim is therefore analyzed under the Fourteenth Amendment.

(1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Whitley, 475 U.S. at 321; see also Hudson v. McMillian, 503 U.S. 1 (1992); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

In the instant case, Defendants are entitled to summary judgment on Plaintiff's claim for excessive force. Although Plaintiff contends that McCain's "ungrateful actions inflicted were consistent with an attempt to stop Plaintiff's disruptive behavior, rather than to injure him, is without merit and irrelevant," the undersigned disagrees with Plaintiff. (See Dkt. No. 84 at 10.) In his Affidavit, Defendant McCain states, *inter alia*,

> On December 5, 2010, Wells refused to follow my orders to return to his cell. As a result, I was forced to place him in an escort hold and return him to his cell. I used this hold in an effort to return Wells to his cell in a calm manner and without the need for a further use of force. To my recollection, I used this hold correctly and did not injure Wells' leg. I do not recall him making any complaints of pain as he was returned to his cell for this institutional infraction. Furthermore, I do not recall that any injury was noted by a medical professional.

(McCain Aff. ¶ 6.) Plaintiff does not dispute that he was noncompliant; instead, he states, "Refusal directives alone does not justify a response such as occurred in this case . . . ." (Dkt. No. 73 at 5 of 9.)

Given that Plaintiff failed to comply with McCain's order to return to his cell, and the minimal amount of force used herein, Plaintiff's claim for excessive force fails. There was a need for application of the force, as Plaintiff was noncompliant, and the amount of force used directly correlated to the need for force: McCain placed Plaintiff in an escort hold and escorted Plaintiff back to his cell. Although Plaintiff claims injury, there is no evidence of injury as a result of the escort hold, and this minimal amount of force did, as McCain states,

16

prevent the need for use of further force. On these undisputed facts, the undersigned recommends granting Defendants' Motion for Summary Judgment on this claim.

### 3. Conditions of Confinement Claim

Although this claim is not well-defined, it appears Plaintiff seeks to assert a conditions of confinement claim. To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir.1991)). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir.2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. See Strickler, 989 F.2d at 1380-81.

Plaintiff complains of overcrowding and bugs. Plaintiff states that he came into contact with staph four times while on lockup, and that he believes he is "getting this staff [sic] so much because these showers [aren't] . . . clean[ed]." (Dkt. No. 83 at 4; Dkt. No. 84-1 at 10 of 34.) For purposes of the instant motions, the undersigned assumes that a staph infection could constitute a serious or significant physical injury, though it is unclear exactly how Plaintiff contracted this infection. The undersigned concludes, however, that the Defendants

are entitled to summary judgment on this claim because there is no evidence that they were deliberately indifferent. Although Plaintiff made numerous complaints to Defendants regarding his medical care, there is no evidence in the record that Defendants knew the showers were in such a state as could cause infections. Moreover, as discussed and described above, Defendants did treat Plaintiff when he contracted the infection, and when treatment at SCDF was unable to remedy the problem, SCDF staff sent him to the Spartanburg Regional Medical Center. Furthermore, it appears there was some effort on the part of SCDF employees to control bugs. (See Dkt. No. 55 at 8 of 10.) On these facts, the Defendants are entitled to summary judgment.

The undersigned also concludes Defendants are entitled to qualified immunity. The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). Even assuming that Plaintiff presents evidence of a violation of a constitutional right, the undersigned concludes that it would not have been clear to a reasonable officer that his conduct with regard to this claim was unlawful.

For the above reasons, the undersigned recommends granting Defendants' Motion for Summary Judgment on the conditions of confinement claim.

**B.    Plaintiff's Motions for Summary Judgment**

18

As noted above, Plaintiff filed two Motions for Summary Judgment. (Dkt. No. 55; Dkt. No. 84.) For the reasons discussed herein, Defendants are entitled to summary judgment. Accordingly, the undersigned recommends denying Plaintiff's Motions for Summary Judgment.

## C.    Plaintiff's Motion to Strike

On or about November 29, 2011, Plaintiff filed a Motion to Strike. (Dkt. No. 96.) The document is entitled "Motion to Strike and Memorandum in Support of Motion for Summary Judgment." (See Dkt. No. 96 at 1 of 7.) Although it is not clear exactly what Plaintiff is seeking to strike, Plaintiff complains about various affidavits filed by Defendants. For example, Plaintiff complains about the wording in Defendant Powers' Affidavit, wherein Defendant Powers referred to "inmates." (Dkt. No. 96 at 1 of 7.) Plaintiff states, [H]e could not have been speaking of me because that's a person confined to an institution such as a prison or hospital. I was a pretrial detainee incarcerated at the SCDF awaiting trial." (Dkt. No. 96 at 1-2 of 7.) In addition, Plaintiff states that Nurse Byars' statements in her Affidavit are "far from the truth," and that the video of the incident will reveal what happened. (Dkt. No. 96 at 6-7 of 7.)

The undersigned recommends denying Plaintiff's Motion to Strike. Upon review of the affidavits and the Plaintiff's allegations, the undersigned finds that the Plaintiff's motion to strike the affidavits should be denied. See Graves v. Horry-Georgetown Technical College, 512 F.Supp.2d 413, 417 n. 1 (D.S.C.2007) (stating that while it may be appropriate to disregard inconsistent statements in an affidavit, striking is a drastic sanction that was not appropriate under the facts presented).[8]

---

[8]Alternatively, the undersigned would deny the motion to strike as being unavailable as some courts have held that a motion to strike is not available to strike material set forth in affidavits. See United States v. Southern Cal. Edison Co., 300 F.Supp.2d 964, 973 (E.D.Cal.2004); York v. Ferris State Univ., 36 F.Supp.2d 976, 980 (W.D.Mich.1998);

### CONCLUSION

Wherefore, it is RECOMMENDED that both (a) Defendant Bianco's Motion for Summary Judgment (Dkt. No. 75), and (b) the Motion for Summary Judgment filed by Defendants Blackwell; Brown; Byars; Cochran; Green; McCain; Perry; Powers; Sargent; Snipes; and Woodford (Dkt. No. 91), be GRANTED. It is also recommended that Plaintiff's Motion for Summary Judgment (Dkt. No. 55), Plaintiff's Second Motion for Summary Judgment (Dkt. No. 84), and Plaintiff's Motion to Strike (Dkt. No. 96) be DENIED.

IT IS SO RECOMMENDED.


s/Bruce Howe Hendricks
United States Magistrate Judge

February 2, 2012
Charleston, South Carolina


**The plaintiff's attention is directed to the important notice on the next page.**

---

International Longshoremen's Ass'n, S.S. Clerks Local 1624, AFL-CIO v. Virginia Int'l Terminals, Inc., 904 F.Supp. 500, 504 (E.D.Va.1995).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).